# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MICHAEL ANTHONY HOFFMAN,

       Petitioner,

v.                                   CIV. NO. 04-0828 WPJ/WPL

MICHAEL MARTIN, WARDEN, AND
THE ATTORNEY GENERAL OF NEW
MEXICO,

       Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Michael Anthony Hoffman was convicted of embezzlement of property valued over $250 and sentenced to eighteen months, enhanced by eight years pursuant to the state habitual offender statute. [Record Proper (hereafter "RP") 104-05]  Although the eighteen-month portion of the sentence was suspended, Hoffman was ordered to serve eight years in prison.  [RP 105]  After unsuccessfully pursuing a direct appeal and state habeas relief, he filed a timely *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  [Doc. 1]

This matter is before me on Hoffman's petition, Respondents' answer, the state court record, and several motions filed by Hoffman.  For the reasons that follow, I recommend that the motion to amend and supplement be granted, but that the remaining motions and the petition be denied.

## PROPOSED FINDINGS

### FACTUAL BACKGROUND

The evidence at trial established that Hoffman went to a used-car lot one afternoon and indicated that he was interested in buying a particular car.  [Transcript (hereafter "Tr.") 11-14]

Hoffman's friend, Roshaan Artis, was with him.  [Tr. 92]  Ernie Bourland, the manager of the lot, testified that he gave Hoffman permission to take the car for two hours to have it inspected by a mechanic and to show it to his daughter.  [Tr. 12-13]  Hoffman testified that Bourland agreed to let him take the car to a few mechanics and to get his girlfriend's approval.  According to Hoffman, they did not discuss how long he could keep the car.  [Tr. 93-94]  It is undisputed that Hoffman left some identification with Bourland and that he took the car to one mechanic.  [Tr. 12, 14, 93]

Police Officer Antonio Saenz testified that he came into contact with Hoffman at about 5:00 on the morning after Hoffman took the car from the used-car lot.   [Tr. 37-39]  The car had been driven onto a "concrete marker."  [Tr. 39]  Saenz had a difficult time determining what had happened because Hoffman was "evasive."  [Tr. 40-41]  He ran a check on the car and Hoffman, but did not get any "hits."  [Tr. 41,43]  When Hoffman refused consent to search the car, Saenz called for a canine unit because he thought narcotics might be in the car.  The dog did not detect any narcotics. [Tr. 41-42]  Hoffman flagged down a motorist, who dragged the car back onto the road, and Saenz left the scene.  [Tr. 44]

Police Officer Roy Askin testified that at about 8:00 on the morning after Hoffman took the car from the used-car lot, he was dispatched to a mobile home park "in regards to suspicious people" and a "suspicious vehicle." [Tr. 51-53]  Askin testified that Hoffman denied he was the driver of the car.  [Tr. 54-55]  Hoffman testified that this was a truthful statement because he "wasn't driving it at the time." [Tr. 123]

Later in the morning, the owner of the mobile home park informed Bourland that the car was at her park.  The car had a sticker on the window identifying the used-car lot.  [Tr. 31, 34-35]  Bourland went to the mobile home park and saw the car, which was "loaded" with clothes and

personal items.  [Tr. 18]  Because the key was not in the car, he went back to the car lot and called a tow truck.  About fifteen or twenty minutes later, the tow-truck driver called to say that the car was not at the mobile home park when he arrived.  [Tr. 18-19]

Bill Wood, an auto mechanic and friend of Hoffman, testified that Hoffman brought the car by his shop, but he was not able to inspect it immediately, so he asked Hoffman to come back in about forty-five minutes.  When Hoffman returned, the car stopped running in front of Wood's shop. [Tr. 85-86, 113]

Hoffman testified that after Wood got the car running, he took it to his friend, Mike, who was also a mechanic and who worked at a homeless shelter. [Tr. 96-98]   Artis had been staying at the shelter, but had been "kicked out." [Tr. 98-99, 103]  Mike did not have time to look at the car, but said he would have time the next morning.  [Tr. 98]   Hoffman took the car to another mechanic friend at Wal-Mart, who also was not able to inspect the car at that time.  [Tr. 99]  After that, Hoffman went back to the used-car lot to check in with Bourland, but the lot was closed.  [Tr. 99-100]  He then went to his uncle's house and spent the night there.  [Tr. 100]

Hoffman's uncle testified that Hoffman brought the car to his house and that he agreed to loan Hoffman the money to buy the car. He denied that Hoffman spent the night at his house. [Tr. 130-32]

Hoffman testified that the next morning, he and Artis went to see Hoffman's girlfriend, who lived at the mobile home park.  [Tr. 100]  The car "died" while they were on the way to the mobile home park.  [Tr. 101] Hoffman asked another motorist to push him to a gas station.  That is how the car got stuck on the concrete marker.  [Tr. 101-02]

After the encounter with Officer Askin, they used the car to take Hoffman's girlfriend's daughter to the hospital.  [Tr. 109]  He never was able to get another mechanic to inspect the car.

[Tr. 126] Nevertheless, Hoffman decided to go to his uncle's house, where he would drop off the clothes and get some money to buy the car, and then go back to the used-car lot. [Tr. 109] As he was on his way to his uncle's house, he was stopped by the police because Bourland had reported the car stolen. When Hoffman was stopped, the back seat of the car had two plastic bags full of clothes, two pairs of shoes, toothbrushes, and soap. The trunk was also filled with clothes, shoes, and a large box containing personal items. [Tr. 19, 68-71, 109]

### PROCEDURAL BACKGROUND

Hoffman's trial counsel filed a notice of appeal and a docketing statement with the New Mexico Court of Appeals. [Doc. 14 Ex. D, E] The docketing statement asserted that the prosecutor's closing argument equated Hoffman's failure to return the car with an intent to defraud. As a result, the jury could find Hoffman guilty simply by finding that Hoffman kept the car longer than Bourland anticipated. The docketing statement also claimed that Hoffman was denied a fair trial because he was not able to consult with his attorney until the night before the trial due to turnover at the Public Defender Department. [Doc. 14 Ex. E]

In a proposed summary disposition, the New Mexico Court of Appeals rejected the contention regarding closing argument, noting that the jury charge required the jury to determine whether Hoffman fraudulently intended to deprive Bourland of the car. [Doc. 14 Ex. F] The court further concluded that there was sufficient circumstantial evidence to support the conviction. The court rejected the contention regarding the inability to consult with counsel because there was no indication that counsel was ineffective during the trial. [Doc. 14 Ex. F]

In a memorandum in opposition to the proposed summary disposition (MOP), Hoffman, now represented by appellate counsel, raised three issues. [Doc. 14 Ex G] First, he argued that the State

failed to prove all the elements of embezzlement. Specifically, the State failed to prove that he converted the car to his own use and that he fraudulently intended to deprive Bourland of the car. Hoffman also asserted that the prosecutor's closing argument had the potential to confuse the jury regarding conversion and fraudulent intent. He argued that his trial counsel should have sought a jury instruction on mistake of fact to clarify this point. [Doc. 14 Ex. G pp. 2-3, 6]

In the second issue, Hoffman argued that his trial counsel was ineffective. He asserted that he told counsel that Roshaan Artis was with him when he picked up the car and could corroborate his version of the agreement with Bourland, but counsel did nothing to secure Artis's testimony and denied Hoffman's request that he seek a continuance to locate Artis. In addition, Hoffman claimed that counsel did nothing to obtain a police photograph of the car, showing that Hoffman left the "for sale" sign on the car. [Doc. 14 Ex G pp. 7-8]

In the third issue, Hoffman's counsel raised several "procedural irregularities" that Hoffman requested her to raise.[1] The procedural irregularities were that: 1) there were no African-Americans on the jury; 2) most or all of the jurors were related to employees of the sheriff, the court administration, or the Department of Corrections; and 3) counsel was ineffective in the following particulars: a) failing to file motions to suppress the police officers' testimony; b) violating his right to a speedy trial; c) failing to secure Hoffman's presence before the grand jury; d) failing to object to inappropriate jury instructions; e) failing to object to evidence of his prior bad acts; f) failing to object to the prosecutor's inflammatory remarks during closing argument; g) failing to ask for a

---

[1]Counsel included these issues pursuant to *State v. Franklin*, 428 P.2d 982 (N.M. 1967), and *State v. Boyer*, 712 P.2d 1 (N.M. Ct. App. 1985), which set out the procedure for appellate counsel to follow when the appellant wishes to raise issues that counsel has no confidence in or cannot in good faith support. Hoffman's counsel did not provide any argument or citations to law or the record regarding the "procedural irregularities;" she simply listed them as I have listed them here.

directed verdict at the close of the State's case; and h) failing to file a motion for new trial.   [Doc. 14 Ex G p. 8] Hoffman's counsel also filed a motion to amend the docketing statement to add issues raised in the MOP that were not included in the original docketing statement.   [Doc. 14 Ex. H]

The New Mexico Court of Appeals issued a memorandum opinion, affirming Hoffman's conviction and denying the motion to amend the docketing statement.   [Doc.14 Ex. I]  Hoffman's appellate counsel then filed a petition for writ of certiorari with the New Mexico Supreme Court, re-asserting the issues raised in the court of appeals.   [Doc. 14 Ex. J] Although the supreme court initially granted the petition on two issues, it later quashed the writ.   [Doc. 14 Ex. K, M, Q]

Following the quashing of the writ of certiorari, Hoffman filed a *pro se* petition for writ of habeas corpus in the state trial court. [Doc. 14 Ex. U]  The state habeas court denied the petition without conducting an evidentiary hearing.   [Doc. 14 Ex. V]  Hoffman filed a petition for writ of certiorari with the New Mexico Supreme Court, re-asserting the issues raised before the state habeas court.   [Doc. 14 Ex. W]  The supreme court denied the petition.   [Doc. 14 Ex. X]

### EXHAUSTION AND PROCEDURAL DEFAULT

Hoffman's petition is 165-pages long and raises eleven interrelated issues, some of which contain numerous subparts.  Respondents' answer does not raise any procedural defenses and states, "Petitioner has exhausted these issues by bringing them to the highest state court."  [Doc. 14]  The Respondents thus waived the defenses of exhaustion and procedural default.  *See*  28 U.S.C.A. § 2254(b)(3) (West Supp. 2004) (providing that exhaustion is waived if the state, "through counsel, expressly waives the requirement"); *Gonzales v. McKune*, 279 F.3d 922, 926 & n.8 (10th Cir. 2002) (holding that the express waiver requirement was satisfied where the respondent's answer ""admit[ted] that petitioner has properly exhausted the issues now presented to this Court'"); *Hooks*

*v. Ward*, 184 F.3d 1206, 1216 (10th Cir. 1999) (stating that procedural default is an affirmative defense that may be waived).

Despite the Respondents' waiver, I note that some of the issues in Hoffman's petition were either not presented to the state courts or were not presented in the same posture in which they are presented here.  Moreover, the state habeas court declined to consider several of the issues Hoffman presented to that court on the ground that they were either considered, or could have been considered, on direct appeal.  [Doc. 14 Ex. V] The court thus based its decision on procedural default.[2]

Although both exhaustion and procedural default may be invoked *sua sponte*, *see Gonzales*, 279 F.3d at 926 and *Hardiman v. Reynolds*, 971 F.2d 500, 503-05 (10th Cir. 1992), I decline to do so here because invocation of the doctrines would delay these proceedings and because Hoffman's issues are easily resolvable on the merits.  *See* 28 U.S.C.A. § 2254(b)(2) (providing that a federal habeas court may deny a claim on the merits, notwithstanding the failure to exhaust state remedies); *see also Tisthammer v. Williams*, 49 Fed. Appx. 757, 764-65 & n.4 (10th Cir. 2002) (addressing the merits of an unexhausted, procedurally barred claim because it would be necessary to request supplemental briefing if the court invoked the procedural issues *sua sponte* and because the claim could be easily resolved on the merits); *Hardiman*, 971 F.2d at 505 (requiring courts to give notice and an opportunity to respond before denying relief *sua sponte* on the basis of procedural default).

---

[2]It is well-established in New Mexico that a person generally may not raise a claim in a habeas proceeding that could have been adjudicated in a direct appeal.  *See Jackson v. Shanks*, 143 F.3d 1313, 1318 (10th Cir. 1998); *State v. Gillihan*, 524 P.2d 1335, 1336 (N.M. 1974); *State v. Blackwell*, 441 P.2d 759, 760 (N.M. 1968).

**STANDARDS OF REVIEW**

A district court has jurisdiction to grant a writ of habeas corpus on behalf of a person in state custody if the custody is in violation of federal law. *See* 28 U.S.C.A. § 2254(a) (West 1994). The Antiterrorism and Effective Death Penalty Act (AEDPA) modified the role that federal habeas courts play in reviewing state convictions. *Bell v. Cone*, 535 U.S. 685, 693 (2002). Congress enacted AEDPA to prevent federal habeas "retrials" and to ensure that state convictions are given effect to the fullest extent possible. *See id.* To those ends, AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d) (West Supp. 2004).

Under the "contrary to" clause of section 2254(d)(1), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A decision is not "contrary to" simply because the state court did not cite Supreme Court opinions. *See Early v. Packer*, 537 U.S. 3, 8 (2002). The state court need not even be aware of the relevant Supreme Court cases, as long as neither its reasoning nor its result contradicts them. *Id.*

Under the "unreasonable application clause," "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The focus of this inquiry is whether the state court's application of clearly established federal law is "objectively unreasonable," and "objectively unreasonable" is not synonymous with "incorrect." *Bell*, 535 U.S. at 694.

Under section 2254(d)(2), a decision is based on an unreasonable determination of the facts if it is shown by clear and convincing evidence that the factual finding is erroneous. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *see also* 28 U.S.C.A. § 2254(e)(1) (requiring federal habeas court to presume that state court's determination of factual issues is correct unless the petitioner rebuts the presumption by clear and convincing evidence).

These standards of review apply only to claims that were "adjudicated on the merits in State court." 28 U.S.C.A. § 2254(d); *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (*petition for cert. filed* March 14, 2005). The pre-AEDPA standard of review applies to claims that were not adjudicated on the merits in state court. *Gipson*, 376 F.3d at 1196; *Hooks*, 184 F.3d at 1223. Pure questions of law and mixed questions of law and fact are reviewed *de novo*. *Hooks*, 184 F.3d at 1223; *see also* 2 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 30.2a (3d ed. 1998). But if a state court has made factual determinations that are relevant to these questions, those factual determinations must still be presumed correct. *See Hooks*, 184 F.3d at 1223; *see also* 28 U.S.C.A. § 2254(e)(1).

The term "adjudicated on the merits" has been liberally construed. A summary decision by a state court is treated as an adjudication on the merits as long as the claim was not expressly denied on procedural grounds. *See Gipson*, 376 F.3d at 1196, *Cook v. McKune*, 323 F.3d 825, 831 (10th Cir. 2003).

**SUFFICIENCY OF THE EVIDENCE**

In his first issue, Hoffman asserts that his right to due process was violated because the evidence was insufficient to prove every element of embezzlement beyond a reasonable doubt. [Doc. 1 p. 1]

The question thus presented is whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004), *cert. denied*, 125 S. Ct. 2544 (2005). It is the jury's province to weigh the evidence and to draw reasonable inferences therefrom. *Jackson*, 443 U.S. at 319; *Turrentine*, 390 F.3d at 1197. When the record supports conflicting inferences, the reviewing court must presume that the jury resolved the conflict in favor of the prosecution and the court must defer to that resolution. *See Turrentine*, 390 F.3d at 1197.

In evaluating the evidence, the reviewing court must look to state substantive law for the elements of the crime. *See id.* In New Mexico, the elements of embezzlement are: 1) the defendant was entrusted with property; 2) the defendant converted the property to the defendant's own use (*i.e.*, kept the property rather than returning it or used the property for his own purpose); and 3) at the time the defendant converted the property, the defendant fraudulently intended to deprive the owner of the property (*i.e.*, intended to deceive or cheat). *See* N.M. STAT. ANN. § 30-16-8 (West 2003); N.M. UJI 14-1641; *State v. Archie*, 943 P.2d 537, 538-39 (N.M. Ct. App. 1997). Hoffman claims here, as he did before the state courts, that the State failed to prove the second and third elements of embezzlement. [Doc. 1 p. 1] Because the New Mexico Court of Appeals adjudicated these claims

on their merits, AEDPA's standard of review applies.[3]

The court of appeals correctly noted that it was required to view the evidence in the light most favorable to the verdict and to resolve all conflicts in favor of the verdict. [Doc. 14 Ex. I p. 2] The court then held that evidence that the car was taken overnight, contrary to Bourland's understanding of his agreement with Hoffman, and that Hoffman did not restrict his use of the car to having it inspected by mechanics, was sufficient evidence that he converted the car to his own use and intended to deprive Bourland of the car at least temporarily. The court rejected Hoffman's argument that any interference with Bourland's rights was insignificant because Hoffman kept the car overnight and Bourland was called to the mobile home park to retrieve the car. The court concluded that a reasonable factfinder could determine from these actions that Hoffman converted the car and that he intended to deceive or cheat Bourland. [Doc. 14 Ex. I pp. 2-4]

From my review of the trial transcript, I believe it only strengthens the court of appeals' conclusion that the evidence was sufficient.[4] For example, it is undisputed that Hoffman had filled the car's back seat and trunk with bags of clothes and personal items belonging to him and Artis, and Hoffman testified that he used the car to take his girlfriend's daughter to the hospital. [Tr. 70-71, 98-

---

[3]The Tenth Circuit recently stated that it has not resolved whether a challenge to the sufficiency of the evidence presents a question of law, subject to review under section 2254(d)(1), or a question of fact, subject to review under section 2254(d)(2). *Turrentine*, 390 F.3d at 1197. The court noted that this issue need not be resolved as long as the petitioner is not entitled to relief under either subsection. *See id.* Therefore, I will consider both standards.

[4]The New Mexico Court of Appeals apparently did not have a transcript of the trial proceedings before it when it reviewed the sufficiency of the evidence. Its review was based on the facts provided in the docketing statement. [Doc. 14 Ex. I] *See* NMRA, 12-210.D(1) (stating that when a case is placed on the summary calendar, a transcript of proceedings shall not be filed). But the New Mexico Supreme Court apparently did have a transcript before it when it quashed the writ of certiorari. [Doc. 14 Ex. N] Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649 (2004).

99, 109]  There was also evidence that during encounters with the police, Hoffman was evasive and denied he was the driver of the car.  [Tr. 40-41, 54]  Hoffman emphasizes evidence indicating that his interference with Bourland's ownership was insignificant.  He also emphasizes evidence suggesting that he did not have a fraudulent intent, such as his leaving his identification with Bourland and his leaving the used-car lot's sticker on the car.  It was for the jury, however, to resolve conflicting inferences from the evidence.

Having reviewed the record and the decision of the court of appeals, I conclude that the court's decision was not contrary to, nor did it involve an unreasonable application of, *Jackson v. Virginia* or any other decision of the Supreme Court.  I also conclude that the decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Therefore, Hoffman is not entitled to habeas relief on this issue.

## JURY INSTRUCTION

In his second issue, Hoffman asserts that his right to due process was violated by the inclusion of an instruction regarding general criminal intent in the jury charge.  [Doc. 1 p. 14]

Whether this issue was adjudicated on the merits in state court is a difficult question. Hoffman did not raise this exact issue in the state courts.  In the MOP, he argued that trial counsel was ineffective in failing to object to "inappropriate jury instructions."  [Doc. 14 Ex. G p. 8]  The court of appeals denied the motion to amend the docketing statement to add the issue of trial counsel's failure to object to "unspecified jury instructions" because the issue was "not viable."  [Doc. 14 Ex. I pp. 2, 6] The court further noted that the majority of the issues included within the motion to amend were matters of trial tactics and strategy that failed to establish ineffective assistance of counsel and were matters that did not appear of record. [Doc. 14 Ex. I p. 6]

-12-

I would ordinarily consider the court of appeals' conclusion that an issue was "not viable" to be an adjudication on the merits. *See Jenkins v. Artuz*, 294 F.3d 284, 291 (2d Cir. 2002) (holding that summary decision stating that claims were "without merit" was an adjudication on the merits); *State v. Moore*, 782 P.2d 91, 101 (N.M. Ct. App. 1989) (indicating that an argument that is not viable is "devoid of any merit"), *overruled on other grounds by State v. Salgado*, 817 P.2d 730 (N.M. Ct. App. 1991). In this case, however, the claim raised on direct appeal was based on a different constitutional right (right to counsel) than the claim raised here (right to due process), and the general reference to "inappropriate jury instructions" probably would not have apprised the court of appeals of the exact complaint regarding the general intent instruction. *Cf. Demarest v. Price*, 130 F.3d 922, 932 (10th Cir. 1997) (holding that to exhaust a claim, the allegations and supporting evidence must offer the state courts a fair opportunity to apply controlling legal principles to the facts bearing upon the claim); 2 LIEBMAN & HERTZ, *supra*, § 23.3(c) (stating that two claims may not be substantially equivalent for purposes of exhaustion if they arise under different constitutional provisions).

In his state habeas petition, Hoffman raised the issue that trial counsel was ineffective in failing to object to the inclusion of the general criminal intent instruction. He also raised the issue that the prosecutor committed misconduct by requesting the instruction. Within his argument on these issues, he argued the substance of the argument he makes here. He specifically asserted that the trial court had the responsibility to instruct the jury correctly and that it erred by including the general intent instruction. [Doc. 14 Ex. U] But the state habeas court included "the propriety of jury instructions" in the list of issues that it would not consider on the ground that they were either considered or could have been considered on direct appeal. [Doc. 14 Ex. V]

-13-

I find it unnecessary to decide whether the issue was adjudicated on the merits in state court because Hoffman is not entitled to relief on this issue regardless of whether AEDPA's standard of review applies.  *See Johnson v. McKune*, 288 F.3d 1187, 1192 (10th Cir. 2002) (suggesting that it is unnecessary to decide whether AEDPA's standard of review applies when petitioner would not prevail under more lenient *de novo* standard); *see also Cox v. Miller*, 296 F.3d 89, 101 (2d Cir. 2002) (finding it unnecessary to decide whether the state court adjudicated a claim on the merits because the disposition would be the same whether the claim was reviewed *de novo* or with AEDPA deference).

In considering a complaint about a jury instruction, the question for the federal habeas court is not whether the instruction is undesirable, erroneous, or even universally condemned, but whether the instruction by itself so infected the entire trial that the resulting conviction violates due process. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997).  The challenged instruction must be considered in the context of the charge as a whole. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

Jury instruction 3 set forth all the elements of embezzlement.  In particular, it explained that the State was required to prove beyond a reasonable doubt that "[a]t the time the defendant converted the [car], the defendant fraudulently intended to deprive the owner of the owner's property. 'Fraudulently intended' means intended to deceive or cheat."  [RP 67]  Jury instruction 5 stated:

> In addition to the other elements of embezzlement, the state must prove to your satisfaction beyond a reasonable doubt that the defendant acted intentionally when he committed the crime.  A person acts intentionally when he purposely does an act which the law declares to be a crime.  Whether the defendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, and his conduct and any statements made by him. [RP 69]

Hoffman contends that jury instruction 5, a general intent instruction, should not have been given because embezzlement is a specific intent crime.  He argues that the jury may have thought the later-given general intent instruction superseded the fraudulent intent instruction.  Therefore, because it is easier to prove general intent than specific intent, inclusion of the general intent instruction lessened the standard of proof and allowed the jury to convict him without finding one of the elements of the crime.  [Doc. 1 pp. 15-17]

An examination of the language of the two instructions does not support Hoffman's argument. Jury instruction 3, the elements instruction, expressly required the State to prove beyond a reasonable doubt that Hoffman intended to deceive or cheat Bourland out of the car.  Jury instruction 5 began by stating, "In addition to the other elements of embezzlement . . . ."  Thus, it would have been clear to the jury that jury instruction 5 did not supersede jury instruction 3.  *See State v. Gee*, 89 P.3d 80, 86 (N.M. Ct. App. 2004).

Hoffman has not demonstrated that the general intent instruction so infected the entire trial that his conviction violates due process.  Therefore, he is not entitled to habeas relief on this issue.

## VENIRE

In his third issue, Hoffman asserts that his right to trial by an impartial jury was denied because there were no African-Americans in the venire.  [Doc. 1 p. 19]

In his state habeas petition, Hoffman raised the issue that trial counsel was ineffective in failing to strike the jury panel because the venire systematically and intentionally excluded a distinctive group, thereby denying Hoffman's right to a fair cross-section of the community and his right to a fair and impartial jury.  Within his ineffective assistance argument, he argued the substance of the argument he makes here.  [Doc. 14 Ex. U]   In its list of issues that it would not consider, the state

-15-

habeas court included the statement, "*The defendant failing to show bias or misconduct*, the racial make-up of the jury panel."  [Doc. 14 Ex. V emphasis added]  It thus appears that the court adjudicated the merits of this issue.  *See Johnson*, 288 F.3d at 1191-92  (holding that decision stating that claim was not subject to review, but adding that the claim was "one previously rejected" by the court was an adjudication on the merits).  Again, however, I need not resolve this question because Hoffman is not entitled to relief regardless of whether AEDPA's standard of review applies.

Hoffman seems to base his argument primarily on the Sixth Amendment, but he discusses the Equal Protection Clause as well.  Therefore, I will consider his claim under both of those constitutional provisions.  To establish a prima facie violation of the Sixth Amendment's guarantee of a jury pool comprised of a fair cross-section of the community, Hoffman must show: 1) that the group allegedly excluded is a distinctive group; 2) that the representation of this group in jury venires is not fair and reasonable in relation to the number of such persons in the community; and 3) that this under-representation is due to systematic exclusion of the group in the jury-selection process.  *See Duren v. Missouri*, 439 U.S. 357, 364 (1979); *United States v. Gault*, 141 F.3d 1399, 1402 (10th Cir. 1998).  To establish a violation of the Equal Protection Clause, Hoffman must show that the jury-selection process resulted in substantial under-representation of a recognizable and distinct class over a significant period of time.  *See Castaneda v. Partida*, 430 U.S. 482, 494 (1977); *Gault*, 141 F.3d at 1402.

Hoffman relies on census data showing that African-Americans make up two percent of the population of Doña Ana County.  Based on these data, he argues that he was entitled to have two African-Americans in his venire out of a jury pool of one-hundred.  [Doc. 1 pp. 20-21]  At most, these data demonstrate that African-Americans were under-represented in the venire for Hoffman's

case.  This is insufficient to establish a violation of the Sixth Amendment or the Equal Protection

Clause.  *See Castaneda*, 430 U.S. at 494; *United States v. Hill*, 197 F.3d 436, 445 (10th Cir. 1999).

Hoffman is not entitled to habeas relief on this issue.

### COMPULSORY PROCESS

In his fourth issue, Hoffman asserts that his right to compulsory process was denied because

his counsel failed to secure the presence of Roshaan Artis at trial.  [Doc. 1 p. 25]  As with the

previous two issues, Hoffman did not raise this exact issue on direct appeal.  [Doc. 14 Ex. E, G]  He

only asserted that trial counsel was ineffective in failing to secure Artis's testimony.  [Doc. 14 Ex. G]


In his state habeas petition, Hoffman again raised the issue that trial counsel was ineffective

in failing to secure Artis's testimony.  Within his ineffective assistance argument, he discussed the

right to compulsory process.  [Doc. 14 Ex. U]  The state habeas court included the "failure of Mr.

Roshaan Artis to testify" in the list of issues it would not consider.  [Doc. 14 Ex. V]  It thus appears

that the state courts did not adjudicate the merits of Hoffman's compulsory process claim and that

AEDPA's standard of review does not apply.  But, again, I need not resolve that question because

Hoffman is clearly not entitled to habeas relief.

To establish a violation of his right to compulsory process, Hoffman must show that his trial

was fundamentally unfair.  *Young v. Workman*, 383 F.3d 1233, 1238 (10th Cir. 2004) (relying on

*United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982)).  This means that the testimony must have

been material, *i.e.*, its admission would have created reasonable doubt or its exclusion might have

affected the trial's outcome.  *See id.*

Hoffman claims that Artis would have corroborated his testimony because Artis was with him

throughout the entire time that he had the car.  In particular, he asserts that Artis would have corroborated that there was no agreement with Bourland to return the car in two hours.  [Doc. 1 pp. 25-26]

Hoffman testified that Artis was a friend of his who had just been "kicked out"of a homeless shelter.  [Tr. 98-99, 103]  He also indicated that one of the reasons he refused to allow the police to search the car was that most of the things in the car were Artis's and he "wasn't sure what he might have in there."  [Tr. 104, 120]  Hoffman's own testimony thus suggests that Artis may not have been a good witness.  Moreover, it is undisputed, based on the testimony of both Bourland and Hoffman, that Bourland allowed Hoffman to take the car for purposes of a test drive, to have it inspected by one or more mechanics, and to show it to his daughter or girlfriend.  Hoffman admitted that he kept the car overnight and used it to take his girlfriend's daughter to the hospital and to transport personal items.  Therefore, even if the jury believed that Hoffman and Bourland did not have an express agreement as to the length of time that Hoffman could keep the car, there was still abundant evidence from which the jury could have found that Hoffman converted the car to his own use with the intent to deceive or cheat Bourland.

Based on a review of the record, I am not convinced that admission of Artis's testimony would have created reasonable doubt or that its exclusion might have affected the trial's outcome.

### HABITUAL OFFENDER STATUTE

In his fifth issue, Hoffman asserts that his sentence violates his rights to due process and equal protection and constitutes cruel and unusual punishment.  [Doc. 1 p. 30]  This argument arises from a change to New Mexico's habitual offender statute after Hoffman was sentenced.

When Hoffman was sentenced,  the habitual offender statute provided that a person who had

-18-

three or more prior felony convictions would have his basic sentence increased by eight years.  *See*

N.M. STAT. ANN. § 31-18-17, historical & statutory notes (West 2003).  While Hoffman's petition

for writ of certiorari was pending before the New Mexico Supreme Court, the statute was amended

to provide that a prior felony conviction could only be used for enhancement if less than ten years had

passed since the person completed his sentence for the prior conviction.  *See id.* § 31-18-17.D &

historical & statutory notes.  Hoffman contends that one of the prior convictions used to enhance his

sentence would not qualify under the amended statute.  Since his embezzlement conviction was not

yet final when the statute was amended, he asserts that he is entitled to be resentenced under the

amended statute.  [Doc. 1 pp. 31-32]

The state habeas court found this argument to be "without merit."  The court stated that

Hoffman "was sentenced properly according to the law as it stood then.  Any subsequent amendment

of the habitual offender statute does not affect his sentence."  [Doc. 14 Ex. V]  Because the court

adjudicated the merits of this issue, AEDPA's standard of review applies.

Generally, state sentencing rules do not raise constitutional issues cognizable in a habeas

proceeding.  *Niemann v. Parratt*, 596 F.2d 316, 317 (8th Cir. 1979).  States are accorded a large

measure of discretion in interpreting their own sentencing statutes and in deciding when a change in

sentencing law will take effect.  *See Murray v. Cowley*, 913 F.2d 832, 834 (10th Cir. 1990); *see also*

*Howard v. Nelson*, 1998 WL 694469, at **3 (10th Cir. 1998) (holding that defendant was not

entitled to federal habeas relief due to a change in state sentencing guidelines); *Niemann*, 596 F.2d

at 318 (finding no constitutional error in state court's decision to apply pre-1972 version of the

indeterminate sentencing statute to all defendants sentenced before enactment of 1972 amendment);

*Meeks v. Jago*, 548 F.2d 134, 138 (6th Cir. 1976) (holding that defendant was not denied equal

protection or due process when he was sentenced according to the statute applicable at the time of sentencing, even though statute was amended to provide for lesser sentence less than a month after defendant's sentencing), *overruled on other grounds by Rose v. Lundy*, 455 U.S. 509 (1982).  *But cf. Johnson v. Arizona*, 462 F.2d 1352, 1354 (9th Cir. 1972) (suggesting that to avoid violating the Equal Protection Clause, a state must have a rational basis for applying a change in sentencing law retroactively for some defendants but not others).

Hoffman has not cited, and I have not found, any Supreme Court case that arrived at a conclusion opposite to the state court's decision or any Supreme Court case with materially indistinguishable facts that was decided differently.  Nor has Hoffman demonstrated that the state court unreasonably applied a governing legal principle from a Supreme Court case or unreasonably determined the facts.  Therefore, he is not entitled to habeas relief on this issue.

### PROSECUTORIAL MISCONDUCT

In his sixth issue, Hoffman asserts that several types of prosecutorial misconduct occurred in his case.  [Doc. 1 p. 36] On direct appeal, Hoffman did not raise the issue of prosecutorial misconduct, although, as will be noted below, he did touch upon some of the arguments he makes here.  In his state habeas petition, Hoffman made all the arguments he makes here regarding prosecutorial misconduct, but the state habeas court included prosecutorial misconduct in the list of issues that it would not consider.  [Doc. 14 Ex. V]  Because the state courts did not adjudicate the merits of these arguments, AEDPA's standard of review generally does not apply.  Regarding the arguments that were touched upon in the direct appeal, I would reach the same result whether I considered them under AEDPA or *de novo*.

***Alleged Brady Violations***

Hoffman's first claim of prosecutorial misconduct is that the prosecution failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  [Doc. 1 p. 36] Specifically, he claims that witnesses have "come forward with evidence since the defendant's trial, exposing the State's suppression of favorable evidence to the defense of gifts, favors, or deals made by the State to their key witness for exchange of testimony towards the defendant" and that the district attorney's files contain "impeachable evidence of police misconduct or wrongs on the State's witnesses and information about the State's key witness."  [Doc. 1 p. 37]

To establish a *Brady* violation, a petitioner must show that: 1) the prosecution suppressed evidence; 2) the evidence was favorable to the petitioner; and 3) the evidence was material.  *United States v. McElhiney*, 275 F.3d 928, 932 (10th Cir. 2001).  Hoffman has not made any of these showings.  Other than his own bare allegations, he has not provided this Court with anything to establish that there were any "deals" between the prosecution and Bourland, nor has he provided any information regarding the alleged misconduct of the State's other witnesses.  I am not inclined to recommend habeas relief on the basis of Hoffman's bare allegations.  *See Foster v. Ward*, 182 F.3d 1177, 1191 (10th Cir. 1999) (holding that the petitioner bears the burden of presenting evidence to establish a *Brady* violation); *United States v. McPartlin*, 595 F.2d 1321, 1346 n.32 (7th Cir. 1979) ("[A] denial of Due Process cannot be premised on the defendant's mere conjecture that there might have been favorable evidence which was undisclosed. The existence of the evidence must be established . . . .").

Hoffman also argues that the prosecution violated *Brady* by failing to disclose Bourland's whereabouts until three days before trial, failing to disclose that the police had Hoffman's

identification cards, and failing to disclose pictures of the car showing that the used-car lot's name and "for sale" sign were still on the car when it was recovered.[5]  [Doc. 1 pp. 38-41]  No relief is available under *Brady* for the State's delay in disclosing evidence unless the delay prejudiced the defense.  Nor is relief available when the defense is able to effectively present the tardily disclosed exculpatory evidence at trial.  *See Knighton v. Mullin*, 293 F.3d 1165, 1172-77 (10th Cir. 2002). Hoffman has not shown how any of these failures prejudiced him at trial.  He concedes that his attorney was able to interview Bourland before trial [Doc. 1 p. 82], and he has not demonstrated how an earlier interview would have improved his defense.  The pictures were admitted into evidence at trial, and Bourland's attorney established that Hoffman left the used-car-lot's information on the car. [Tr. 15-17,  24-25, 34, 47-48, 62-63, 71-72, 80-81]  It was also undisputed at trial that Hoffman left his identification cards with Bourland.  [Tr. 23-24]  To the extent the pictures and identification cards constituted exculpatory evidence, their exculpatory nature was thoroughly explored before the jury.

*Closing Arguments*

Hoffman's next claim of prosecutorial misconduct is that the prosecutors made improper remarks during closing arguments.  Hoffman asserts that one of the prosecutors committed misconduct by referring to him and his witnesses as liars.[6]  [Doc. 1 p. 42]  A review of the closing argument reveals these comments by the prosecutor:

> I find it interesting.  Mr. Hoffman has answers for everything.  It was a technicality, I wasn't driving it at the time.  That's not what the officer was asking him, were you the driver at the time.  . . . .  So he lied to the police officer when he

---

[5]On direct appeal, Hoffman argued that trial counsel was ineffective in failing to obtain one of these photographs.  [Doc. 14 Ex. G]  No issue of prosecutorial misconduct was raised regarding the photographs.

[6]On direct appeal, Hoffman argued that trial counsel was ineffective in failing to object to the prosecutor's "inflammatory remarks."  [Doc. 14 Ex. G]  The remarks were not identified.

said he was not the driver.  He lied to Mr. Bourland when he said he was going to
take it to one mechanic and bring it back and he was going to bring it back in two
hours.  And he said he was going to buy the car.
    He also lied in regards to where he stayed that night.  Because the uncle said,
he didn't stay that night with me.  [Tr. 157-58]

After these comments, the prosecutor did not use the word "lied" again, and he told the jury, "It's

up to you to judge the credibility of the witnesses."  [Tr. 158-59]

Generally, an improper prosecutorial remark does not warrant federal habeas relief unless

the remark so infected the trial with unfairness as to make the resulting conviction a denial of due

process.  *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Gipson*, 376 F.3d at 1197.  But

if the remark effectively deprived the defendant of a specific constitutional right, habeas relief may

be warranted without proof that the entire trial was fundamentally unfair.  *See Donnelly*, 416 U.S.

at 643; *Gipson*, 376 F.3d at 1197.  Here, Hoffman suggests that the prosecutor's remark infringed

on his right of confrontation.  This suggestion is without merit because the prosecutor did not

introduce statements made by persons unavailable for questioning at trial.  *See Donnelly*, 416 U.S.

at 643 n.15.  Therefore, I will analyze this issue under the due process standard.

Assuming that the prosecutor's remarks were improper, they did not so infect the trial with

unfairness as to render Hoffman's conviction a denial of due process.  The remarks were isolated, and

the prosecutor himself reminded the jurors that it was their prerogative to decide credibility.  *See*

*Hoxsie v. Kirby*, 108 F.3d 1239, 1244 (10th Cir. 1997) (stating that in a case involving two essentially

conflicting stories, it is reasonable to infer, and to argue, that one side is lying); *United States v.*

*Garcia-Guizar*, 160 F.3d 511, 520-21 (9th Cir. 1998) (holding that prosecutor's isolated comment

that defendant was "a liar" did not warrant reversal under plain error standard); *Garcia v. Thomas*,

1998 WL 115854, at **4 (10th Cir. 1998) (holding that prosecutor's isolated insinuation that

petitioner lied during his testimony was not egregious enough to warrant habeas relief).

Hoffman also claims that one of the prosecutors misstated the law during his rebuttal argument. According to Hoffman, the prosecutor suggested that Hoffman's failure to return the car "was itself sufficient to show intent to defraud."[7] [Doc. 1 p. 45] A review of the rebuttal argument reveals that the prosecutor made no such suggestion.

In his closing argument, defense counsel focused on the element of fraudulent intent. [Tr. 160-67] Counsel stated that the prosecution "must show that he intended to deceive *at the time he took the car*, at the time he converted it." [Tr. 165 emphasis added] In rebuttal, the prosecutor emphasized that Hoffman only had to have fraudulent intent when he converted the car, not when he was entrusted with the car. [Tr. 171-72, 176] This was a correct statement of the law. *See* UJI 14-1641. As such, it could not have been prosecutorial misconduct.

### Prior Convictions

Hoffman's next claim of prosecutorial misconduct is that the prosecution improperly introduced evidence of his prior convictions.[8] [Doc. 1 p. 47] The prosecutor began his cross-examination of Hoffman by asking, "[I]n the past ten years, you have been convicted of two felonies?" Hoffman answered affirmatively. The prosecutor then asked, "So this is not your first brush with the law, is it?" Hoffman agreed. [Tr. 112]

---

[7]On direct appeal, Hoffman's trial counsel raised this argument in the docketing statement, although he did not refer to it as prosecutorial misconduct. [Doc. 14 Ex. E] The proposed summary disposition rejected the argument because the jury was charged on fraudulent intent and the evidence was sufficient. [Doc. 14 Ex. F] In the MOP, appellate counsel raised the issue again, arguing that it "compounded the problem of insufficient evidence." [Doc. 14 Ex. G p. 2] The court of appeals did not mention the argument in its memorandum opinion, but did find the evidence sufficient.

[8]On direct appeal, Hoffman argued that trial counsel was ineffective in failing to object to evidence of his "prior bad acts." [Doc. 14 Ex. G] No issue of prosecutorial misconduct was raised in this regard.

Hoffman argues that the prior convictions were inadmissible because the convictions were not for crimes of dishonesty and because their prejudicial effect outweighed their probative value. [Doc. 1 pp. 47-48] The *Donnelly* due process standard governs review of this issue. *See Hoxsie*, 108 F.3d at 1243 (applying *Donnelly* where prosecution introduced prejudicial pictures of the victim). In New Mexico, evidence that the accused has been convicted of a crime punishable by more than one year in prison "*shall be admitted*" for the purpose of attacking his credibility, if the conviction is not more than ten-years-old and the court determines that the probative value outweighs the prejudicial effect to the accused. NMRA, 11-609.A(1), B (emphasis added). This rule plainly allows evidence of prior convictions regardless of whether they involved dishonesty. *See State v. Mora*, 950 P.2d 789, 803 (N.M. 1997). Thus, the convictions were relevant to credibility and were admissible, subject to the court's balancing of their probative value against their prejudicial effect. Hoffman has not shown that admission of the prior convictions so infected the trial with unfairness as to make the resulting conviction a denial of due process. *See Hoxsie*, 108 F.3d at 1243.

### Canine Sniff

Hoffman's next claim of prosecutorial misconduct is that during his cross-examination, a prosecutor improperly referred to the canine unit searching the car for drugs by asking, "They even ran a dog around the vehicle?" [Tr 119]

Hoffman argues that this question was designed to portray him as a "drug dealer prowling in the middle of the night with an unknown quantity of a narcotic substance." [Doc. 1 p. 49] A fair reading of the cross-examination indicates that the prosecutor was trying to establish Hoffman's fraudulent intent by showing that he acted suspiciously when confronted by the police. The evidence established that Hoffman had no narcotics. Again, Hoffman has not shown that the prosecutor's

-25-

question so infected the trial with unfairness as to make the resulting conviction a denial of due process.

***Alleged False Grand Jury Testimony***

Hoffman's next claim of prosecutorial misconduct is that the prosecution elicited false testimony from a police officer before the grand jury. [Doc. 1 p. 50] At the conclusion of the grand jury testimony, the prosecutor asked a police officer whether Hoffman made a statement when he was arrested. The officer responded that Hoffman said he planned to do some work so he could earn the money to buy the car. [Tape 00/2019] Assuming this testimony was false, there is nothing to show that the prosecutor knew it was false. Therefore, Hoffman has not shown any prosecutorial misconduct. *See United States v. Meyers*, 95 F.3d 1475, 1486 (10th Cir. 1996) (finding no prosecutorial misconduct when prosecutor did not know evidence presented to grand jury was false).

***Jury Instruction***

Hoffman's next claim of prosecutorial misconduct is that the prosecution suggested that the trial court charge the jury on general criminal intent. [Doc. 1 pp. 50-52] As noted above, Hoffman believes that the general intent instruction was inappropriate because embezzlement is a specific intent crime. There is at least a colorable argument that the general intent instruction is not inconsistent with a specific intent instruction. *See Gee*, 89 P.3d at 86-87; *see also* UJI 14-141, committee commentary ("The adoption of this mandatory instruction [on general intent] . . . supersedes cases holding that a general intent instruction is not required if the crime includes a specific intent."). *But see* UJI 14-141 use note ("This instruction must be used with every crime except for . . . crimes in which the intent is specified in the statute or instruction.") And, as discussed above, Hoffman has not shown that the general intent instruction so infected the trial with unfairness as to make the resulting

conviction a denial of due process.

***Cumulative Effect***

Finally, Hoffman claims that he was denied a fair trial by the cumulative effect of all of the prosecution's misconduct.  Because Hoffman has demonstrated little, if any, misconduct, this argument is unavailing.  *See Jones v. Stotts*, 59 F.3d 143, 147 (10th Cir. 1995) (noting that cumulative error analysis only applies to the effects of errors, rather than non-errors).

**INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL**

In his seventh issue, Hoffman asserts that his trial counsel was ineffective in eighteen ways. To establish ineffective assistance of counsel, a habeas petitioner must satisfy a two-part test.  First, he must show that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Judicial scrutiny of counsel's performance is  highly deferential; thus, the petitioner must overcome the presumption that the challenged action might be considered sound trial strategy.  *Id.* at 689.  Second, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.* at 694.

Hoffman raised the majority of his ineffectiveness claims before the court of appeals, the state habeas court, or both.  Most of the claims were included in the list of "procedural irregularities" in the MOP.  [Doc. 14 Ex. G]  The court of appeals denied the motion to amend the docketing statement to include the procedural irregularities because they were "not viable." [Doc. 14 Ex. I p. 2] The court also stated, "The majority of these issues are a matter of trial tactics and strategy and fail to establish ineffective assistance of counsel.  They are also matters that do not appear of record."

[Doc. 14 Ex. I p. 6]  Nevertheless, the court specifically addressed a few of the ineffectiveness claims.

The state habeas court also specifically addressed a few of the ineffectiveness claims.  But it dealt with the majority of the claims by stating that it had determined, after examining the record as a whole, that the following issues were matters of trial tactics and strategy about which the court would not second-guess trial counsel: 1) "cross examination and decisions regarding the use of physical and impeachment evidence;" 2) "objections, or decisions not to object, to evidence and comments by the prosecutor;" 3) "sufficiency of trial counsel's investigation and preparation;" 4) "voir dire of the jury panel;" and 5) "decisions what motions to file or not file."  [Doc. 14 Ex. V]

Because the state courts adjudicated these claims on their merits, AEDPA's standard of review applies.  This means that Hoffman cannot succeed merely by convincing this Court that the state courts applied *Strickland* incorrectly.  Instead, he must show that the state courts' decisions were objectively unreasonable.  *Bell*, 535 U.S. at 698-99.  For the reasons explained below, I conclude that the state courts' decisions were not objectively unreasonable.

### Failure to Secure Testimony of Roshaan Artis

Hoffman first complains that counsel failed to secure Roshaan Artis's testimony.  [Doc. 1 p. 59]  The court of appeals set out the correct standard for evaluating ineffectiveness claims and concluded that the failure to secure Artis's testimony was a tactical decision.  The court also noted that counsel subpoenaed two witnesses and that because Artis's location was not known, counsel would have had to seek a continuance to locate him.[9] [Doc. 14 Ex. I pp. 4-5]

---

[9]In his habeas petition, Hoffman claims that he gave counsel Artis's contact information in Houston, but counsel only sought to locate him in Las Cruces.  When Hoffman discovered counsel's error, he asked counsel to seek a continuance to find Artis, but counsel refused. [Doc. 1 p. 62]

Hoffman has not cited, and I have not found, any Supreme Court case that arrived at a conclusion opposite to the state court's decision or any Supreme Court case with materially indistinguishable facts that was decided differently. Nor has Hoffman demonstrated that the state court unreasonably applied *Strickland*. For the reasons discussed in connection with the compulsory process claim, counsel's failure to call Artis was not necessarily deficient, nor is there a reasonable probability that the trial would have had a different result if Artis had testified.

### Failure to File Motion to Dismiss

Next, Hoffman complains that counsel failed to file a motion to dismiss the indictment. This complaint is based on his argument that the evidence was insufficient to establish all of the elements of embezzlement. [Doc. 1 pp. 64-67] As discussed above, the evidence was sufficient to establish all the elements of the embezzlement. Therefore, counsel's failure to seek dismissal of the indictment was not unreasonable. *See United States v. Dixon*, 1 F.3d 1080, 1083 n.5 (10th Cir. 1993) (holding that counsel is not ineffective in failing to raise a meritless issue), *abrogated on other grounds by Florida v. White*, 526 U.S. 559 (1999); *Coleman v. Brown*, 802 F.2d 1227, 1234 (10th Cir. 1986) ("[T]he Sixth Amendment does not require that every possible motion be filed, but only those having a solid foundation.").

### Failure to Tender Jury Instructions

Next, Hoffman complains that counsel failed to tender proper instructions on specific intent and mistake of fact. He asserts that these instructions were crucial because his belief that he could keep the car overnight was at the heart of his defense. [Doc. 1 p. 67] The court of appeals rejected the contention that counsel should have sought a mistake of fact instruction because the concept was adequately covered by the definition of fraudulent intent. [Doc. 14 Ex. I p. 4]

The trial court correctly charged the jury on fraudulent intent. In finding that Hoffman had a fraudulent intent, *i.e.*, an intent to deceive or cheat, the jury necessarily rejected Hoffman's claim that he had an honest and reasonable belief that he could keep the car overnight. *Compare* UJI 14-1641 (defining "fraudulent intent" as the intent to "deceive or cheat"), *with* UJI 14-5120 (describing "mistake of fact" in terms of "an honest and reasonable belief"). Thus, counsel was not deficient in failing to tender additional instructions.

### *Failure to Object to Jury Instruction*

Next, Hoffman complains that counsel failed to object to the jury instruction on general criminal intent.[10] [Doc. 1 p. 71] Because the general intent instruction is arguably not inconsistent with a specific intent instruction, *see Gee*, 89 P.3d at 86 and committee commentary to UJI 14-141, counsel may have reasonably believed that he had no basis for an objection to the general intent instruction. *Dixon*, 1 F.3d at 1083 n.5; *Coleman*, 802 F.2d at 1234. Moreover, Hoffman has not shown a reasonable probability that the result of the trial would have been different without the general intent instruction. As discussed in connection with Hoffman's second issue, it is unlikely that the general intent instruction would have confused the jury into thinking that Hoffman could be convicted without a finding of fraudulent intent.

### *Failure to Strike Venire*

Next, Hoffman complains that counsel failed to strike the jury panel. This complaint, like his third issue, hinges on his assertion that the venire systematically excluded African-Americans. [Doc.

---

[10]As discussed above, Hoffman only argued on direct appeal that trial counsel was ineffective in failing to object to "inappropriate jury instructions." [Doc. 14 Ex. G] And although he complained of the general intent instruction in his state habeas petition, the state habeas court included the "propriety of jury instructions" in the list of issues that it would not consider. [Doc.14 Ex. V] I would reach the same conclusion regardless of whether I reviewed this issue *de novo* or under AEDPA's deferential standard.

1 p. 75] As explained above, there is nothing to demonstrate that an objection to the venire would have had merit. Therefore, Hoffman has not demonstrated that counsel's performance was deficient or shown a reasonable probability that the result of the proceeding would have been different if counsel had objected. *See Dixon*, 1 F.3d at 1083 n.5; *Coleman*, 802 F.2d at 1234.

**Failure to Protect Right to Speedy Trial**

Next, Hoffman complains that counsel failed to raise and protect his right to a speedy trial. [Doc. 1 p. 79] Regarding this claim, the court of appeals stated:

> [W]e note that Defendant was tried and convicted exactly one year after the grand jury indictment was filed and slightly less than a year after his arraignment on October 2, 2000. . . . . Trial was scheduled for March 28, 2001, when the State filed a motion for a continuance to allow Defendant's counsel time to locate and interview "a critical material witness." . . . . The record indicates that trial was rescheduled for July 3, 2001, in the fifth position and [was] later rescheduled for the date it ultimately took place, September 21, 2001. . . . . We are not persuaded that seeking an extension in order to locate and interview a critical material witness violates Defendant's right to a speedy trial. We note that Defendant also asserts a claim for ineffective assistance of counsel for refusing to request a further extension to locate a material witness. [Doc. 14 Ex. I pp. 6-7]

Speedy trial claims are evaluated by balancing four factors: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of the right; and 4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

Hoffman was arrested on September 12, 2000. [Doc. 1 p. 80] On March 26, 2001, Hoffman's counsel filed a motion for continuance to locate an unnamed "critical material witness." [RP 39] An extension of time to commence trial was granted to July 3, 2001. [RP 41-45] On July 2, 2001, the prosecution announced that it had just been able to locate Bourland in San Diego, but did not know his exact whereabouts. Because it was unlikely that the prosecution would be able to secure Bourland's presence for trial the next day, the court agreed to continue the matter. [Tape 01-

-31-

1414 RP 49-50]  Hoffman was eventually tried on September 21, 2001.  [Tr. 1]

Hoffman claims that he asked counsel to file a speedy trial motion, but counsel failed to do so.  [Doc. 1 p. 86]  He also claims that most of the delay was caused by his counsel's lack of diligence.  Hoffman argues that his defense was impaired because the delay resulted in the loss of a defense witness, presumably Roshaan Artis.

For purposes of this discussion, I will accept as true that Hoffman asked counsel to file a speedy trial motion and that his counsel could have been more diligent in preparing for trial. Nevertheless, the delay in this case barely passed the threshold of being presumptively prejudicial, much of the delay was attributable to missing witnesses (one for the State and one for Hoffman), and Hoffman has not shown that he actually was prejudiced by the delay.  *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) (stating that post-accusation delay approaching one year is generally considered presumptively prejudicial); *Barker*, 407 U.S. at 531 (stating that the need to find a missing witness may be a justifiable reason for delay).  Considering these factors, the court of appeals' decision was not objectively unreasonable.

### Failure to Secure Hoffman's Presence at Pre-Trial Hearing

Next, Hoffman complains that counsel failed to secure his presence at the pretrial hearing held on July 2, 2001.  [Doc. 1 p. 85]  The state habeas court addressed this claim as follows:

> This claim is without merit.  The Court takes judicial notice of its practice.  Pretrial settings are strictly docket control devices and do not address the merits of a case. The defendant suffered no prejudice from his absence. [Doc. 14 Ex. V]

Two constitutional provisions guarantee defendants the right to be present at their criminal proceedings--the Confrontation Clause and the Due Process Clause.  As its name implies, the Confrontation Clause is concerned primarily with the defendant's right to confront--and most

-32-

importantly to cross-examine--the witnesses against him. *See Kentucky v. Stincer*, 482 U.S. 730, 736 (1987). The Due Process Clause guarantees defendants the right to be present at any stage of the criminal proceeding that is critical to its outcome, if the defendant's presence would contribute to the fairness of the procedure. *Id.* at 745. The Clause does not guarantee defendants the right to be present when their presence would be useless. *Id.*

In addition to the federal constitutional guarantees, NMRA 5-603 provides that the defendant generally has the right to appear at a pretrial hearing. However, NMRA 5-612.C(3) provides that the defendant need not be present "at a conference or argument upon a question of law."

The tape of the pretrial hearing fully supports the state habeas court's characterization of the hearing. The prosecutor announced that he would probably not be able to secure Bourland's presence at trial the following day, and defense counsel argued that his testimony should be excluded because the defense had not had an opportunity to interview him. The court agreed to continue the trial and refused to consider the motion to exclude because no written motion to that effect had been filed. [Tape 01-1414]

Hoffman argues that if he had been present at the pretrial hearing, he would have personally objected to the court's refusal to consider the motion to exclude Bourland's testimony and the court's granting of the continuance, thus preserving those issues for appeal. [Doc. 1 pp. 86-87] This argument is unavailing. Hoffman concedes in his habeas petition that counsel was able to interview Bourland three days before the trial. [Doc. 1 p. 82] Moreover, Hoffman did not have the right to act as co-counsel in his case. *State v. Martinez*, 622 P.2d 1041, 1042-43 (N.M. 1981).

The record reflects that only legal issues were discussed at the pretrial hearing. Hoffman has not shown that his absence from the hearing interfered with his right to confront and cross-examine

-33-

witnesses, nor has he shown that his presence at the hearing would have contributed to the fairness of the hearing.  Therefore, the state habeas court's decision was not an unreasonable application of *Strickland.*

### Failure to Object to Improper Arguments

Next, Hoffman complains that counsel failed to object to the prosecutors' inflammatory remarks (the "lied" remarks) and misstatement of the law (equating failure to return the car with fraudulent intent) during closing arguments.  [Doc. 1 p. 88]  Counsel could have reasonably believed that it was better not to object to the prosecutor's "lied" remarks because to do so would merely call attention to them.  And defense counsel had no basis for objecting on the basis of a misstatement of law because, as explained above, the prosecutor did not misstate the law.

### Failure to Conduct Adequate Investigation and Prepare a Defense

Next, Hoffman complains that trial counsel failed to conduct an adequate investigation and prepare a defense.  [Doc. 1 p. 92]  In his discussion of this issue, Hoffman primarily re-argues his complaint regarding the failure to secure Artis's testimony.  I will not revisit that complaint.  To the extent Hoffman is complaining of other failings in counsel's investigation or preparation, his allegations are conclusory and thus provide no basis to conclude that the state-court decision was an unreasonable application of *Strickland.  See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) ("Although we must liberally construe Defendant's pro se petition, [citation omitted] we are not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments.").

### Failure to Consult, Advise, and Communicate

Next, Hoffman complains that counsel failed to consult, advise, and communicate, and granted him insufficient access.  [Doc. 1 p. 94]  In his argument under this issue, he raises a litany of complaints about his attorneys' actions before the trial.  In addition to the purported deficiencies discussed elsewhere in this opinion, Hoffman complains that counsel failed to secure his presence before the grand jury.

Hoffman states that upon receipt of a "target notice," he contacted the public defender's office and was given the name of an attorney who would be representing him.  He claims he told the attorney that he wanted to be present at the grand jury proceedings, but counsel ignored this request.  Hoffman argues that if he and Artis had testified before the grand jury, it probably would have returned a "no bill."  [Doc. 1 p. 95]

An accused does not have a constitutional right to testify before the grand jury.  *See United States v. Williams*, 504 U.S. 36, 52 (1992).  In New Mexico, however, the target of a grand jury investigation has a statutory right to testify.  *See* N.M. STAT. ANN. § 31-6-11.C(3)-(4) (West 2003).  Although errors of state law generally provide no basis for federal habeas relief, an ineffectiveness claim can be premised on errors of state law.  *See Jones*, 59 F.3d at 145 n.2.

Given that Hoffman testified at trial and was convicted, he has not shown a reasonable probability that the result would have been different if counsel had secured his presence before the grand jury.  *See State v. Haynes*, 6 P.3d 1026, 1032 (N.M. Ct. App. 2000) (finding no prejudice from the lack of a "target notice" because, given that a jury convicted the defendant, the court could not say that his testimony before the grand jury would have changed the grand jury's vote); *see also Santeyan v. Lewis*, 1996 WL 329623, at **1 (9th Cir. 1996) (rejecting ineffective assistance claim based on counsel's failure to advise defendant that he could be present at grand jury proceedings

because there was no evidence that defendant's presence would have altered the outcome of the proceedings).  Similarly, assuming Hoffman had the right to have Artis testify, there is not a reasonable probability that his testimony before the grand jury would have changed the outcome of that proceeding.

Hoffman also complains that three different public defenders were assigned to his case and that he did not discuss the case with trial counsel until the eve of trial. [Doc. 1 pp. 94-95] Again, he has not shown a reasonable probability that the result would have been different but for these facts.

**Failure to Object to Evidence of Prior Convictions**

Next, Hoffman complains that counsel failed to object to the evidence of his prior convictions. [Doc. 1 p. 101]        It is within the trial court's discretion to determine whether the probative value of evidence of prior convictions is outweighed by their prejudicial effect.  *See Mora*, 950 P.2d at 803. In this case, credibility was a key issue.  The prior crimes (aggravated battery on a peace officer and child abuse) were not similar to embezzlement, and in any event, the prosecutor did not reveal the nature of the crimes.  Thus, their inflammatory impact was minimal.  Considering these factors, counsel may have reasonably concluded that the trial court would not have excluded the evidence. *See  id.* (listing factors the court should consider); *see also Dixon*, 1 F.3d at 1083 n.5; *Coleman*, 802 F.2d at 1234.

**Failure to Request a Directed Verdict**

Next, Hoffman complains that counsel failed to request a directed verdict after the State rested.  [Doc. 1 p. 103]

After the State rested, defense counsel stated, "I move to dismiss the case on the basis that the prima facie case was not made by the prosecution."  The court denied the motion.  [Tr. 83]

-36-

In New Mexico, the term "prima facie case" describes the quantum of evidence that must exist for the State to avoid a directed verdict. *See, e.g., State v. Robinson*, 616 P.2d 406, 409 (N.M. 1980) ("The motion for a directed verdict . . . is directed to the sufficiency of the evidence to establish a prima facie case supporting the charge."). It therefore appears that counsel essentially did move for a directed verdict. Moreover, in Hoffman's argument under this issue he merely reiterates the arguments made under his issue regarding the sufficiency of the evidence. As my discussion of that issue indicates, there was sufficient evidence to support an embezzlement conviction when the State rested.

### *Failure to File a Motion for New Trial*

Next, Hoffman complains that counsel failed to file a motion for new trial. He contends that counsel should have sought a new trial on the grounds of insufficient evidence, newly discovered evidence, and on the ground that the verdict was against the weight of the evidence. [Doc. 1 pp. 106-08] Regarding the insufficient evidence ground, I have already explained that the evidence was sufficient to support the conviction.

A trial court may grant a new trial on the basis of newly discovered evidence only if the evidence: 1) would probably change the result; 2) was discovered since the trial; 3) could not have been discovered before the trial by the exercise of due diligence; 4) is material; 5) is not merely cumulative; and 6) is not merely impeaching or contradictory. *State v. Desnoyers*, 55 P.3d 968, 981 (N.M. 2002). Hoffman asserts that Artis's testimony was newly discovered evidence. The testimony, however, fails to satisfy several of the requirements of newly discovered evidence. For example, no showing has been made that Artis's testimony probably would have changed the result. Additionally, his testimony might be considered merely cumulative. *See, e.g., State v. Litteral*, 793 P.2d 268, 274

(N.M. 1990).

A trial court may grant a new trial when the evidence against the verdict is so overwhelming as to be an injustice. *See State v. Griffin*, 877 P.2d 551, 553-55 (N.M. 1994). From a review of the record, it is apparent that this standard has not been met.

Because it does not appear that any of Hoffman's new-trial grounds are meritorious, he cannot demonstrate either deficient performance or prejudice. *See Dixon*, 1 F.3d at 1083 n.5; *Coleman*, 802 F.2d at 1234.

### *Failure to Collaterally Attack Convictions Used for Enhancement*

Next, Hoffman complains that counsel failed to collaterally attack the prior convictions that were used to enhance his sentence. [Doc. 1 p. 109]

The State filed a supplemental criminal information, seeking enhancement of Hoffman's sentence because he had been convicted of three prior felonies. [RP 85-86] The State later filed an amended supplemental criminal information, replacing one of the three prior convictions with a different conviction. [RP 102-03]

Hoffman asserts that the replaced conviction was a misdemeanor conviction, which could not be used to enhance his sentence. He claims that he informed defense counsel of this, and counsel falsely stated that he would object to the use of this conviction. Hoffman argues that counsel's failure to object allowed the State to replace the misdemeanor conviction with another conviction only two working days before the sentencing hearing. [Doc. 1 pp. 109-10]

Notably, Hoffman does not claim that the conviction added to the amended supplemental criminal information was not a felony or was not valid in any way. Nor has he demonstrated how he was prejudiced by the State's filing the amended supplemental criminal information only two working

-38-

days before sentencing.  Therefore, Hoffman has demonstrated neither deficient performance nor prejudice.  *See Dixon*, 1 F.3d at 1083 n.5; *Coleman*, 802 F.2d at 1234.

### *Failure to Inquire About Race During Voir Dire*

Next, Hoffman complains that counsel failed to ask relevant questions on racial attitudes during voir dire.  He argues that counsel should have inquired about the prospective jurors' racial attitudes because he is black and Bourland is white and because the trial occurred in a predominately white area.  [Doc. 1 pp. 111-12]

An attorney's actions during voir dire are considered to be matters of trial strategy.  *Nguyen*, 131 F.3d at 1349.  "[T]he combination of a local history of racial discrimination and an interracial crime, without more, does not mean that trial counsel is deficient in failing to investigate on voir dire the possible racial prejudice of veniremen."  *Moore v. Butler*, 819 F.2d 517, 520 (5th Cir. 1987). Because Hoffman has demonstrated nothing more than an interracial crime, he has not shown that his counsel was deficient.

### *Failure to Examine Grand Jury Tape and Conduct Adequate Cross-Examination*

Next, Hoffman complains that counsel failed to examine the grand jury tape and failed to adequately cross-examine the State's witnesses.  Hoffman reiterates here his unsupported claim that the police officer gave false testimony before the grand jury.  Other than that unsupported claim, he offers no specifics; he merely asserts that counsel failed to examine the grand jury tape and that he failed to cross-examine the police officers about inconsistencies in their testimony.  [Doc. 1 p. 114] These conclusory assertions are insufficient.  *See  Fisher*, 38 F.3d at 1147.

### *Failure to Examine the District Attorney's File*

Next, Hoffman complains that counsel failed to examine the district attorney's file. In particular, he claims that counsel failed to discover the photographs of the car and the deal between the prosecution and its key witness. [Doc. 1 pp. 115-17] As noted above, there is no evidence beyond Hoffman's bare allegations of any deal between the prosecution and Bourland. Also as noted above, the photographs were admitted into evidence, and counsel established that Hoffman left the used-car-lot's information on the car. Again, Hoffman has demonstrated neither deficient performance nor prejudice.

### Failure to File Motion in Limine

Last, Hoffman complains that counsel failed to file a "motion for in limine" to exclude evidence regarding the "canine sniff" for drugs due to its prejudicial effect. [Doc. 1 p. 118] Because it was undisputed that no narcotics were found, it is difficult to understand how this evidence was unfairly prejudicial to Hoffman. Therefore, counsel's failure to seek its exclusion was not deficient.

### INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In his eighth issue, Hoffman argues that his appellate counsel was ineffective in seven ways. The *Strickland* test applies to claims of ineffective assistance of appellate counsel. *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003). The state habeas court adjudicated the merits of this issue.

### Failure to Adequately Argue All Issues

In three of his arguments under this issue, Hoffman complains that counsel failed to raise or failed to adequately raise all the issues he asked her to raise on appeal. [Doc. 1 pp. 122, 133, 139] Thus, the relevant inquiries under *Strickland* are whether appellate counsel was objectively unreasonable in failing to raise or adequately raise the issues and, if so, whether there is a reasonable probability that but for this unreasonable failure, Hoffman would have prevailed on his appeal. *Neill*

*v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001).  In making these inquiries, the reviewing court

must consider the merits of the omitted issues.  *Id.*  Although a claim of appellate ineffectiveness may

be premised on the failure to raise an issue, it is difficult to establish deficient performance because

counsel need not raise every nonfrivolous issue, but rather may select from among them to maximize

the likelihood of success on appeal.  *See Smith v. Robbins*, 528 U.S. 259, 288 (2000); *Cargle*, 317

F.3d at 1202.

        I have already discussed the merits of the issues that Hoffman faults appellate counsel for not

raising or not adequately raising.  Having considered these issues, I cannot conclude that the state

habeas court's decision was an unreasonable application of *Strickland*.  *See Cargle*, 317 F.3d at 1202

("[O]f course, if the issue is meritless, its omission will not constitute deficient performance.").

### *Failure to State the Facts Properly and File a Motion for Rehearing*

        Next, Hoffman complains that counsel failed to state the facts properly.  [Doc. 1 p. 127]  The

docketing statement erroneously stated that the owner of a mobile-home park called Bourland to

report that the car was there, when in fact she reported this information to Bourland in person, and

erroneously stated that when Bourland arrived at the mobile-home park, the car was gone, when in

fact the car was at the mobile-home park when Bourland arrived, but was gone by the time a tow

truck arrived to take it back to the used-car lot.  Hoffman claims that he asked appellate counsel to

correct these errors, but she failed to do so.  [Doc. 1 pp. 127-28]  He also complains that appellate

counsel stated in the MOP that Hoffman's purported conversion only lasted a few hours.  [Doc. 1

p. 130]  The court of appeals rejected this characterization of the evidence, noting that the car was

taken overnight.  Hoffman argues that counsel should have filed a motion for rehearing to correct the

errors.[11]   [Doc. 1 p. 131]

Because appellate counsel apparently did not have a copy of the transcript when she filed the MOP, it was not objectively unreasonable for her to rely on trial counsel's recitation of the evidence in the docketing statement.  Moreover, it is difficult to imagine how these minor discrepancies could have possibly changed the result on appeal.[12]   The state habeas court's decision was not an unreasonable application of *Strickland*.

### Failure to Communicate

Next, Hoffman complains that counsel failed to communicate with him or to let him "pilot his case."  In particular, he complains that counsel failed to copy cases for him and provide him with a copy of the transcript.  [Doc. 1 pp. 134-36]  Hoffman has not cited, and I am not aware of, any authority requiring appellate counsel to take these actions.  Nor has Hoffman shown a reasonable probability that the appeal would have had a different result but for counsel's purported violations of the professional rules.

### Failure to Avoid a Conflict of Interest

Finally, Hoffman complains that counsel had a conflict of interest.  [Doc. 1 p. 145]  Hoffman was represented at trial by the Public Defender Department.  [RP 52]  The trial court initially appointed the Public Defender Department to represent Hoffman on appeal as well.  [RP 118-19]

---

[11]Attached to Hoffman's petition is a letter from counsel, stating that the court of appeals had affirmed his conviction, that she would not file a petition for writ of certiorari on his behalf, and that her representation had ended.  [Doc. 1 p. 132]  Hoffman suggests that he was effectively without counsel during the time for filing a motion for rehearing.  [Doc. 1 App. H]  However, he has also attached a subsequent letter from counsel, stating that the Public Defender Department had informed her that its policy was to file a petition for certiorari in all cases.  [Doc. 1 App. I]  Counsel did file a petition for certiorari on Hoffman's behalf.

[12]In his petition, Hoffman mentions several "facts" outside the record that, when combined with facts in the record, *might* support an inference that Bourland only reported the matter to the police because he was angry about paying the tow-truck charge.  [Doc. 1 p. 130]  I will not consider facts outside the record.

After the docketing statement was filed, the Department moved to withdraw, stating that its Appellate Division had a conflict of interest and that it had retained private counsel for Hoffman.  The court of appeals granted the motion.  [Doc. 14 Ex. J]

Hoffman asserts that the attorney retained by the Public Defender Department did not effectively represent him because of her loyalty to the Department and her colleagues.  As evidence of this, he points to the purported deficiencies I have already discussed--the failure to raise all of his appellate issues and to file a motion for rehearing and the initial refusal to file a petition for writ of certiorari.  [Doc. 1 pp. 146-48]

To prevail on an ineffective assistance claim based on a conflict of interest, Hoffman must establish that an actual conflict of interest adversely affected counsel's performance.  *See Mickens v. Taylor*, 535 U.S. 162, 173-74 (2002).  While counsel may not have raised all of the issues Hoffman asked her to raise, she did argue that trial counsel, the Public Defender Department, was ineffective in several ways, thus suggesting that she did not put any loyalty to the Department ahead of her responsibility to her client.  In this proceeding, I have found those issues not raised and those not vigorously argued by appellate counsel to be without merit.  It is true that counsel did not file a motion for rehearing and initially refused to file a petition for writ of certiorari.  But she did eventually file a timely certiorari petition, which was initially granted by the New Mexico Supreme Court.  Significantly, she filed the petition at the behest of the Public Defender Department.  [Doc. 1 App. I]

The state habeas court's conclusion that there was no actual conflict of interest was not contrary to or an unreasonable application of clearly established federal law.  *See Richards v. Clow*, 702 P.2d 4, 6 (N.M. 1985) (holding that all contract or staff attorneys of the Public Defender

Department are not necessarily disqualified just because of a conflict of interest of the attorneys in a particular county or judicial district); *see also Carter v. Gibson*, 27 Fed. Appx. 934, 947-48 (10th Cir. 2001) (holding that Oklahoma Court of Criminal Appeals was not unreasonable under AEDPA in concluding that no inherent conflict exists within the public defender's office when claims of ineffectiveness are raised against fellow employees).

## CUMULATIVE EFFECT OF COUNSELS' ERRORS

In his ninth issue, Hoffman asserts that because of the cumulative effect of counsels' errors, the prosecution's case was not subjected to meaningful adversarial testing. [Doc. 1 p. 149] Having rejected Hoffman's specific allegations of ineffectiveness, the state habeas court rejected this argument as well. [Doc. 14 Ex. V] This decision was not contrary to or an unreasonable application of clearly established federal law. *See Jones*, 59 F.3d at 147.

## MISCARRIAGE OF JUSTICE

In his tenth issue, Hoffman asserts that his right to due process was violated because his conviction was obtained through a miscarriage of justice, resulting in fundamental error. In his argument under this issue, Hoffman merely reiterates the arguments I have already rejected. [Doc. 1 pp. 151-58] Therefore, he is not entitled to habeas relief on this issue.

## DENIAL OF RIGHT TO APPEAL

In his eleventh issue, Hoffman asserts that his absolute right to appeal was unconstitutionally denied. [Doc. 1 p. 158] This issue was not adjudicated in the state courts.

In his argument under this issue, Hoffman reiterates his complaints about trial and appellate counsel, faults the state habeas court for not conducting a hearing, and asserts generally that he was denied meaningful appellate and post-conviction review. [Doc. 1 pp. 158-61] I have conducted a

scrupulous review of the record and have thoroughly considered Hoffman's issues--most of which were raised in the state proceedings. Having found no merit to those issues, I also reject the contention that the state's appellate and post-conviction procedures were constitutionally insufficient.

### HOFFMAN'S MOTIONS

***Motion to Amend and Supplement the Petition***

Hoffman has filed a "Motion to Amend and Supplement the Petitioner's 28 U.S.C. § 2254 [sic]," requesting leave to amend his prayer for relief to request that he be brought before this Court to be discharged or, in the alternative, for an evidentiary hearing with appointed counsel. The amended prayer also adds a request for transcripts and to conduct discovery. [Doc. 16] Leave to amend should be "freely given," FED. R. CIV. P. 15(a), and the requested amendment does not raise any statute of limitations concerns because it does not add entirely new claims or theories. *See Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001). Therefore, I recommend that this motion be granted. But because I have determined that Hoffman's claims do not warrant relief, the language of the prayer for relief is immaterial.

***Motions for Evidentiary Hearing***

Hoffman has filed two "Motion[s] for an Evidentiary Hearing." [Doc. 5, 22] A habeas petitioner is not entitled to a hearing when the issues can be resolved on the basis of the record. *See Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993); *Coleman*, 802 F.2d at 1242. Moreover, general and conclusory assertions do not warrant an evidentiary hearing. *Coleman*, 802 F.2d at 1242; *cf. United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004) ("District courts are not required to hold evidentiary hearings in [§ 2255] collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim."), *cert. denied*, 125 S. Ct. 1592 (2005) .

The majority of Hoffman's issues could be resolved on the basis of the record.  Although he has raised some issues (such as the *Brady* and venire issues) that rely on facts outside the record, Hoffman is not entitled to an evidentiary hearing because his allegations regarding those issues are conclusory.  He merely alleges, without any support, that exculpatory evidence was withheld and that African-Americans have been systematically excluded from venires.

### *Motions for Discovery, Experts, and Investigators*

Hoffman has filed a "Motion for Discovery" [Doc. 19] and a "Motion for Appointment of Essential Experts or Investigators or for Other Necessary Financial Assistance." [Doc. 20]  In these motions, he asserts that he needs to conduct discovery and to retain experts and investigators to develop the factual bases for his claims.

Rule 6(a) of the Rules Governing Section 2254 Cases provides that a judge may, for good cause, authorize a party to conduct discovery.  To establish good cause, a petitioner must make specific allegations providing a reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief.  *See Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997).  Hoffman's allegations are conclusory and do not show good cause.  *See Romano v. Gibson*, 278 F.3d 1145, 1150 (10th Cir. 2002); *Wallace v. Ward*, 191 F.3d 1235, 1245 (10th Cir. 1999).  I conclude that he is not entitled to discovery, the appointment of investigators and experts, or financial assistance to develop his issues.

### *Motions for Counsel*

Hoffman filed a motion for appointment of counsel that was denied before this matter was referred to me.  [Doc. 3, 15]  He subsequently filed another "Motion for the Appointment of

Counsel" [Doc. 18], specifically requesting counsel to represent him during discovery and at an evidentiary hearing, and a "Motion for Expedited Briefing Schedule and for Appointment of Counsel," requesting, in addition to the appointment of counsel, that the Court order briefing on his claims and grant all of his pending motions.  [Doc. 24]

Hoffman does not have a Sixth Amendment right to appointed counsel in a federal habeas proceeding.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  Counsel will be appointed only when "the interests of justice so require."  18 U.S.C.A. § 3006A(a)(2)(B) (West 2000 & Supp. 2004).  In deciding whether to appoint counsel, the following factors should be considered: the merits of the petitioner's claims, the nature of the factual issues raised in the claims, the petitioner's ability to present the claims, and the complexity of the legal issues raised by the claims.  *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995).

Having evaluated Hoffman's arguments and the record, I find that Hoffman demonstrated sufficient ability to argue the factual and legal bases of his claims, but that the claims are ultimately meritless.  Therefore, the interests of justice do not require the appointment of counsel.  I also find that briefing is unnecessary.

### *Motions for Transcripts*

With his petition, Hoffman filed a "Motion to Require the State to Provide Petitioner and the Court with a Transcript of the Prior Proceedings." [Doc. 4]   The Court subsequently ordered the respondent to file the state record proper and transcripts.  [Doc. 17]  On the day the Court's order issued, Hoffman filed a second "Motion to Require the State to Provide Petitioner and the Court with a Transcript of the Prior Proceedings." [Doc. 21]  After the record proper and transcripts were filed in this Court, Hoffman filed a "Motion for Correct Record Proper." [Doc. 25]  In this motion, he

stated that the respondent sent him copies of the record proper and transcripts from another case. The respondent filed a response to this motion, admitting that some documents from another case were erroneously sent to Hoffman.

To the extent Hoffman seeks to have Respondents provide this Court with the record proper and transcripts, his motions are moot because they have done so. To the extent he seeks copies of these documents for himself, he is not entitled to them. An indigent habeas petitioner does not have a constitutional right to access a free transcript to search for error. *Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. 1992). Here, without access to the record, Hoffman managed to raise and argue forty issues in his habeas petition. Most of these issues cite specific allegations of error in the record. Thus, Hoffman adequately argued his issues without being provided a free copy of the record, and he has not demonstrated a need for the record.

## RECOMMENDED DISPOSITION

For the reasons stated herein, I recommend that:

1) the Motion to Amend and Supplement the Petitioner's 28 U.S.C. § 2254 Petition [Doc. 16] be GRANTED;

2) the Motions for an Evidentiary Hearing [Docs. 5 & 22], Motion for Discovery [Doc. 19], Motion for Appointment of Essential Experts or Investigators or for Other Necessary Financial Assistance [Doc. 20], Motion for the Appointment of Counsel [Doc. 18], Motion for Expedited Briefing Schedule and Appointment of Counsel [Doc. 24], two Motions to Require the State to Provide Petitioner and the Court with a Transcript of the Prior Proceedings [Docs. 4 & 21], and the Motion for Correct Record Proper [Doc. 25] be DENIED, and

3) the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in

State Custody [Doc. 1] be DENIED.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1).  **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE